UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/23/10
```

| | | |
|---|---|---|
| RICHARD DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | 07 Civ. 5920 (BSJ)(DFE) |
| | ) | |
| v. | ) | **Order** |
| | ) | |
| JAMES FARRELL, Acting | ) | |
| Superintendent, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Before the Court are the objections of Petitioner Richard Davis ("Davis") to the Report and Recommendation of Magistrate Judge Douglas F. Eaton, dated February 11, 2010, regarding Davis's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the Court ADOPTS the Report and Recommendation and DENIES petitioner's habeas petition.

### BACKGROUND[1]

Davis brings this pro se habeas petition to challenge his conviction for third-degree burglary after a 2003 trial before Justice Philip M. Grella in Supreme Court, New York County. On March 22, 2004, Justice Grella sentenced Davis, as a second felony offender, to a term of 3 1/2 to 7 years. The Appellate Division affirmed the conviction, People v. Davis, 32 A.D.3d 803, 821 N.Y.S.2d 208 (1st Dep't 2006), leave denied, 7 N.Y.3d

---

[1] Magistrate Judge Eaton has set forth a detailed background of this case in his Report, familiarity with which is assumed. The Court will restate the most relevant facts.

1

901, 826 N.Y.S.2d 906 (Nov. 20, 2006), reconsideration denied, 8 N.Y.3d 879, 832 N.Y.S.2d 492 (Feb. 21, 2007). Davis's Petition was received by this Court's Pro Se Office on June 11, 2007.

Davis's conviction arose from an incident in the Marshak Science Building on the campus of the City College of New York. Manuel Zevallos, a Ph.D. and senior scientist, discovered Davis in an office on the second floor of the Marshak Building. Zevallos shared that office, Room J-227, with five colleagues. In Room J-227 were several desks and chairs. The door was often left ajar, sometimes propped open by a portable air conditioner. Aside from Zevallos and his colleagues, the only people authorized to be in Room J-227 were students who worked in the laboratory.

On June 3, 2003, around 10:15 a.m., Zevallos briefly left Room J-227. His laptop computer was there, either in its case or on his desk. The room was empty but the door was ajar. When he returned a few minutes later, a stranger (Davis) was standing at Zevallos's desk. Davis was packing the laptop into a black Dell computer bag that Davis had brought into the building. Zevallos looked inside the bag, saw his own IBM laptop, and asked: "What are you doing with my computer?" Davis replied: "Oh, it's your computer, I am sorry." Davis ran out of the room, leaving behind his bag and Zevallos's computer. Zevallos ran after Davis and grabbed him. Zevallos testified that "we struggled down the

2

hall, I was yelling for security." Several other people emerged
into the hallway and joined the chase. Davis was stopped on an
outdoor terrace that surrounds the first floor of the Marshak
building. Soon several campus peace officers arrived and Davis
was arrested on charges of third-degree burglary, criminal
trespass, and resisting arrest. Davis testified in the Grand
Jury, and the Grand Jury indicted him solely on the burglary
charge.

## PROCEDURAL HISTORY

### 1. Pre-Trial

Davis was on parole at the time of the June 3, 2003
incident. He was not released on bail. On June 4, 2003, Legal
Aid attorney Joanne Daly was assigned to represent him. At
Davis's request, she was replaced on July 7, 2003, by appointed
attorney Bruce Klang. On November 7, 2003, having dismissed Mr.
Klang, Davis was asked by Justice Grella whether he wanted to
represent himself. Davis confirmed that he wanted to represent
himself, but would like to have a legal advisor assigned to sit
next to him. Attorney Bruce A. Yerman agreed to act as his legal
advisor.

With Mr. Yerman present, but in the background, the judge
proceeded to hold a suppression hearing and Davis handled the
cross-examination. The judge scheduled jury selection for

Monday, and urged Davis to spend the weekend considering whether to change Mr. Yerman's status from legal advisor to attorney.

On Monday, November 10, 2003, Davis made a strenuous effort to adjourn the trial. While preserving his right to proceed pro se, he announced that he had changed his mind to the degree that "I do need a lawyer to represent me," but not Mr. Yerman. Justice Grella denied Davis's request for an adjournment.

Justice Grella carefully questioned Davis and then found that "the defendant is knowingly and intelligently waiving the right to counsel." Davis proceeded to represent himself at a Sandoval hearing, and then at jury selection. At Davis's request, Mr. Yerman did not sit at the table next to Davis.

## 2. Trial

Emanuel Zevallos and three City College peace officers testified for the prosecution. Davis cross-examined all four witnesses, but he presented no evidence. Mr. Yerman was present throughout the trial as Davis's legal advisor. He argued several legal points, proposed language for jury instructions, and made objections to parts of the charge. Mr. Yerman also delivered the defense summation to the jury. On November 18, 2003, the jury found Davis guilty of burglary in the third degree.

## 3. Motion to Set Aside the Verdict

On January 27, 2004, Mr. Yerman filed a motion to set aside the verdict because the original indictment could not be found.

4

In a written order dated March 5, 2004, Justice Grella denied the motion. He ruled that Davis had failed to rebut the presumption of regularity, citing People v. Arac, 297 A.D.2d 560 (1st Dep't 2002). Moreover, by March 9, 2004, at the conference where the judge announced his ruling, he also announced that the original, signed indictment had been found in the court file, "stapled to the back of some court forms."

## 4. Sentencing

Sentencing took place on March 22, 2004. Mr. Yerman presented mitigating information, namely a brain injury during Davis's youth. He also related Davis's explanation of the events of June 3, 2003, that Davis was attempting to enroll in classes. Mr. Yerman urged Justice Grella to sentence Davis to the minimum of 2 to 4 years. Davis also spoke. The People urged the judge to impose 3 ½ to 7 years. Justice Grella found Davis to be a second predicate felon and imposed a sentence of 3 ½ to 7 years.

## 5. Appeal

Davis's appointed appellate attorney, Michael Reyes, filed a 36-page brief with the Appellate Division, raising six arguments:

A. The evidence was legally insufficient and/or the verdict was against the weight of the evidence.

B. The judge violated Davis's right to counsel of his own choosing, and improperly permitted Davis to proceed pro se.

5

C. The judge improperly precluded Davis from cross examining Zevallos and Sgt. Tillman about Sgt. Tillman's statement of what she heard from Zevallos.

D. The judge should have arranged for Davis to be present when the judge notified the prosecutor that the original indictment was missing from the court's file.

E. The prosecutor's summation improperly urged the jury to consider their own office buildings.

F. The trial judge should have instructed the jury that a person entering premises which are open to the public does so with license unless he defies a lawful order not to enter.

The Appellate Division ruled as follows:

> The verdict was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the jury's determinations concerning credibility. The evidence clearly established that defendant unlawfully entered a college building that had no-trespassing signs and a security guard at its entrance, and that was only open to those visitors who complied with security procedures and obtained passes. Defendant's behavior, including his attempt to steal a laptop computer, supported the inference that he entered with criminal intent.
>
> The court properly exercised its discretion in denying defendant's belated request for an adjournment so that his family might attempt to retain private counsel. Defendant made this request at the commencement of the *Wade* hearing, he had already caused two other attorneys to be relieved, and he had rejected the services of yet another assigned counsel whom the court made available. Furthermore, defendant's sister advised the court that it was unlikely that the family could pay for private counsel.

> The court properly permitted defendant to
> proceed pro se after he knowingly,
> intelligently and voluntarily waived his
> right to counsel. Defendant unequivocally
> invoked his right to self-representation,
> and the court's searching inquiry
> established that he understood the dangers
> and disadvantages of proceeding pro se and
> the value of legal representation.
>
> We have considered and rejected defendant's
> remaining claims.

People v. Davis, 32 A.D.3d at 803-04, 821 N.Y.S.2d at 209-10

(citations omitted).

6. Habeas Petition In This Court

    In his petition, Davis essentially repeats the six

arguments raised in the appellate brief, as well as these three

additional arguments, summarized as follows:

> Ground Two: "The State Court violated
> petitioner['s] Constitutional Rights to
> notice of the nature and cause of the
> accusation ..., and there is no way of
> knowing which [theory the jurors] chose."
>
> Ground Four: "The State Courts lack[ed]
> Jurisdiction ... because the prosecutor
> knowingly filed a[n] insufficient defective
> accusatory instrument ...."
>
> Ground Six: "The Trial Court lack[ed]
> jurisdiction ... in the absence of the
> original signed Grand Jury indictment ...."

    In his Report and Recommendation, Judge Eaton recommended

denial of Davis's habeas petition because none of his nine

arguments support habeas relief.

**DISCUSSION**

### A. Standard of Review

When a magistrate judge has issued findings or
recommendations, the district court "may accept, reject, or
modify [them] in whole or in part." 28 U.S.C. § 636(b)(1)(C).
The Court reviews de novo any portions of a Magistrate Judge's
R&R to which a petitioner has stated an objection. Id.; see
United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).

### B. Davis's Objections

This Court reviews Davis's objections to Judge Eaton's
Report and Recommendation as follows.

### 1. Sufficiency of Evidence

In his objection, Davis argues that Judge Eaton overlooked
certain evidence presented at trial that was insufficient to
prove the essential elements of third degree burglary. Davis
first argues that, in order to prove that he "knowingly" entered
the Marshak Building "unlawfully," the People were required to
(a) introduce the sign-in book and show that he failed to sign
it, or (b) produce similar testimony from a security guard.
However, the State did show that the entrances were restricted
to those with permission to enter, they were clearly marked as
to no trespassing, visitors were required to display a guest
pass, and that Davis did not possess such a visitor's pass when
he was stopped. Under New York law, that evidence was sufficient

to prove that Davis was on notice that he needed permission to enter the building. See People v. Mason, 292 A.D.2d 294, 739 N.Y.S.2d 257 (1st Dep't 2002). It was not necessary to prove the exact method or place of entry, and it was not necessary to demonstrate that Davis was informed of the building's rules and procedures. The fact of Davis's presence in the building without a visitor's pass supported the conclusion that he had entered it unlawfully.

Davis also argued that the People were required to prove that he entered with the "specific intent to ... steal a laptop." However, the burglary statute merely says "enters or remains ... with intent to commit a crime" in the building. Under New York law, in most circumstances, the jury need only find that the defendant had a general intent to commit any crime. People v. Barnes, 50 N.Y.2d 375, 429 N.Y.S.2d 178, 180 n.3 (Ct. App. 1980), citing People v. Mackey, 49 N.Y.2d 274, 279, 425 N.Y.S.2d 288 (Ct. App. 1980).

Whenever a habeas petition challenges the sufficiency of the evidence, the controlling Supreme Court precedent is Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). Jackson requires the petitioner to show that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. On the record in this case, Davis fails to meet that stringent standard. It is undisputed that Davis

brought a Dell laptop bag into the Marshak Building. Zevallos testified that he found Davis in Room J-227, and that Davis's hand was on the Dell laptop bag, which now contained Zevallos's laptop. When Zevallos questioned him, Davis fled; flight can support an inference of "consciousness of guilt." A rational jury was entitled to choose to believe Zevallos's testimony, which would support an inference that Davis had brought the Dell bag for the purpose of stealing someone else's laptop if the opportunity arose.

## 2. Notice of Jury "Theory"

In his objections, Davis argues that the verdict should not stand because it is unclear what reasoning or "accusatory instrument" the jury used to reach its verdict. Davis argues that "the Appellate Division decision involved an unreasonable determination of facts in light of the evidence presented in the State Court proceeding and there is no way of knowing which theory the jurors chose."

The U.S. Supreme Court stated that "[t]he question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached.... [Habeas review] does not require scrutiny of the reasoning process actually used by the fact finder – if known." Jackson, 443 U.S. at 319 n. 13, 99 S.Ct. at 2789 n. 13. Further, this Court does not find the Appellate Division's

decision to not inquire into the jury's reasoning as unreasonable in light of the evidence presented in the State Court proceeding.

## 3. Prevention of Cross-Examination of Mr. Zevallos

In his objections, Davis argues that Judge Eaton overlooked how the trial court violated his right to confront witnesses when it prevented Davis from cross-examining Manuel Zevallos. The Felony Complaint, which was signed by Sergeant Sharlene Tillman, described a struggle over the laptop between Mr. Zevallos and Davis; specifically, that Zevallos had witnessed Davis with his hand on the laptop, that Zevallos sought to retrieve the laptop, and that Davis would not surrender it. During his testimony, Zevallos stated that Davis did not have his hand on the laptop itself, but rather had his hand on a case which contained the laptop, and that Zevallos never tried to take away the laptop from Davis. Davis sought to question Zevallos (and later Sgt. Tillman) about the statements in the Felony Complaint that differed from Zevallos's trial testimony. Justice Grella precluded such questions. This ruling was consistent with New York law, which says a witness may not be impeached with a prior inconsistent statement where the statement was recorded by someone else and the witness did not have an opportunity to verify its accuracy. People v. White, 272 A.D.2d 239, 240 (1st Dep't 2000).

Later, when Sgt. Tillman was on the stand, both Davis and Mr. Yerman asked the judge to allow Davis to cross-examine her about Zevallos's statements and the Felony Complaint. Justice Grella ruled that such questions were trying to "attack the credibility of Zevallos, which is a collateral issue through this witness." Davis now argues that such questions went to Sgt. Tillman's credibility and not that of Zevallos. This Court finds that Justice Grella was correct in holding that Davis was trying to use Sgt. Tillman and her document to impeach the credibility of Zevallos and that such questioning was thus impermissible.

Davis argues in his objection that New York law allows such questioning when a witness testifies concerning a fact material to the case. See People v. Schwartzman, 24 N.Y. 2d 241, 246 (1969). First, it is questionable whether the relevant issue (in sum, whether Davis was actually holding the laptop or the bag) was material. Further, even if such a ruling was in error, the judge's evidentiary ruling did not render the trial so fundamentally unfair as to rise to the level of violation of the Due Process Clause. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

## 4. State Court's Jurisdiction

In his objections, Davis argues that Judge Eaton failed to understand his argument regarding jurisdiction. Davis argues that because Sgt. Tillman knowingly exaggerated the Zevallos-Davis confrontation and falsely reported the incident in the Felony Complaint, there never existed probable cause to arrest Davis. Without probable cause, Davis argues that the State courts lacked subject matter jurisdiction to commence the criminal action.

This argument is meritless. Zevallos's trial testimony confirms that the campus peace officers had probable cause to arrest Davis. Even if it were true that Sgt. Tillman knowingly exaggerated what Zevallos told her, that would not defeat a trial court's jurisdiction once a Grand Jury filed an indictment against Davis. Justice Grella explained this to Davis: "[T]he felony complaint ... is just to hold you, pending the Grand Jury. The felony complaint can be totally defective at this point and it would have no bearing on the proceedings."

## 5. The Lost Grand Jury Indictment

At one point during the trial Justice Grella was unable to locate the original indictment in the court file. At his direction, the prosecutor then placed an unsigned copy into the file. However, prior to sentencing, the signed indictment was located and returned to the court file. Davis argues that Judge

13

Eaton's recommendation was wrong because he stated that Justice Grella found the indictment while according to Davis, his legal advisor Mr. Yerman located the original indictment. Davis argues that he had a Constitutional right to be present when the judge informed the prosecutor that he was unable to locate the original indictment.

This Court finds such arguments meritless. A defendant is entitled to be present only during "material" stages of the trial, and the issue regarding the temporarily "lost" indictment was a "ministerial" matter. People v. Hameed, 88 N.Y.2d 232, 240-41, 644 N.Y.S.2d 466, 470-71 (Ct.App. 1996). Further, the identity of who found the lost indictment is immaterial to the Court's habeas analysis.

6. Jurisdiction Without Indictment

In his objections, Davis argues Judge Eaton overlooked the issue that without a signed grand jury indictment the trial court lacked subject matter jurisdiction to proceed with the trial. Even if the original signed indictment had never resurfaced, that would not have been a valid ground for federal habeas: the Federal Constitution does not require any of the States to use grand juries or indictments. Citing Staley v. Greiner, 2003 WL 470568 (S.D.N.Y. Feb. 6, 2003).

14

7. Prosecutor Summation

During ADA Cadorine's summation, the following exchange

took place:

> MS. CADORINE: I ask you to use your common
> sense and your logic here. Many of you
> probably work in office buildings, you may
> or may not have security – -
>
> MR. YERMAN: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> MS. CADORINE: – - that if one person should
> enter into a building, because they happen
> to get past security, does that make your
> building opened to the public?
>
> Now, Mr. Yerman also talked about Room J-227
> and he said there were no signs on the door
> and nothing indicating that visitors were
> not in fact welcomed. I ask you, once again,
> to think about your own office spaces and
> the office space that you have been in.
>
> I submit to you, just because your office
> door doesn't say, no trespassing allowed,
> visitors not permitted, that that doesn't
> mean that you have some sort of open door
> policies where almost anyone can walk in and
> out almost at their free will.
>
> MR. YERMAN: Objection, your Honor.
>
> THE COURT: Overruled.

Mr. Yerman again brought up this objection the next day, but

Justice Grella declined to strike the argument from the record.

Davis argues that the prosecutor's summation "went beyond

the four corners of the law" and "urged the jurors to

personalize matters not in evidence." Davis argues that this

"inflammatory" statement created prejudice against Davis and brought in evidence not offered in trial.

Habeas will not be granted on the basis of prosecutorial misconduct during summation unless the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 1871 (1974). To prevail, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).

The remarks by the prosecutor certainly did not so "infect the trial with unfairness as to make the resulting conviction a denial of due process." Davis has failed to demonstrate actual prejudice from the prosecutor's comments, nor has he shown a substantial and injurious effect on the jury's verdict.

## 8. Licensed Entry in Public Buildings

Justice Grella declined to instruct the jury that entry into a building that is open to the public is licensed. New York Penal Law § 140.00 states that a "person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege." Justice Grella did not instruct the jury on this exception.

Davis objects to Judge Eaton's finding that "no rational jury could find that the Marshak Science Building was entirely 'open to the public.'" Davis states that he only argues that the portion of the building he entered was open to the public.

This Court finds this distinction unconvincing. An improper instruction will not support habeas relief unless it violates a federal constitutional right, or results in a conviction so fundamentally unfair that it violates the due Process Clause. See Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S.Ct. 475, 482 (1991) ("[T]he fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief.") Such is not the case here. Justice Grella's choice to exclude the jury instruction did not result in a fundamentally unfair conviction, particularly in view of the evidence of the clearly-posted signs reading "City College I.D. must be worn in all buildings," "no trespassing or loitering," and "violators will be prosecuted."

## 9. Right to Counsel

Davis claims that Judge Eaton was incorrect in finding that Davis's waiver to his right of counsel was knowingly and intelligently made because it was not voluntary.

At Davis's arraignment on June 4, 2003, the court assigned Joanne Daly of the Legal Aid Society to represent him. On June 20, 2003, when he was arraigned on the indictment, Davis asked

17

for new assigned counsel. On July 7, 2003, the court appointed Bruce H. Klang. At some point between September 5 and November 7, Davis discharged Klang. On November 10, 2003, Davis told Justice Grella that Klang had refused to raise "issues that I was telling him to raise...."

Consequently, Davis had no attorney when he appeared before Justice Grella on November 7, 2003. He told Justice Grella that he was going pro se because Mr. Klang had not represented him "properly." Asked by the judge if he would like to be represented by an attorney "from here on in," Davis replied that he would "rather go pro se at the hearings" and decide later if he wanted an attorney to represent him after that. Later, he agreed to have an attorney, Mr. Yerman, appointed as a legal advisor. Justice Grella emphasized: "if any time you decide you want to be represented by counsel, rather than just having an advisor ..., we will arrange for that to happen." Before adjourning for the weekend, Justice Grella urged Davis to reconsider his decision to represent himself. He explained the pitfalls of proceeding pro se and the advantages of being represented by an experienced attorney.

On Monday, November 10, 2003, Mr. Yerman was again present. Justice Grella asked Davis if he had given more thought as to whether he would like to have an attorney. Mr. Davis stated his desire for an attorney, but requested an adjournment of time so

that he could hire a private attorney. Davis's sister was in the courtroom, and Justice Grella asked her whether the family had taken steps to hire a lawyer. The sister responded that the family could not raise the funds for a private lawyer. Davis again asserted that he wanted to represent himself.

Justice Grella asked Davis a series of questions regarding his background, his state of mind, and his health. He discussed the ramifications of going pro se and the ground rules for the trial, situations that might arise, the difficulties if a defendant decides to testify, and the advantages of having a lawyer. Davis reiterated his desire to represent himself, but was eventually convinced to keep Mr. Yerman as an advisor.

The U.S. Supreme Court has held that not only does a defendant have the constitutional right to defend himself, but that states may deprive a defendant of the right to conduct his own defense by forcing him to accept a state-appointed public defender. See Faretta v. California, 422 U.S. 806 (1975). The Court also outlined the proper procedure when a defendant says he wants to manage his own defense: "the accused must 'knowingly and intelligently' forgo those relinquished benefits [associated with the right to counsel].... [H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. at 835 (citations omitted).

Justice Grella carefully made Davis "aware of the dangers and disadvantages of self-representation." His finding that "the defendant is knowingly and intelligently waiving the right to counsel" was entirely reasonable. He appointed Mr. Yerman as standby counsel. (It later turned out that Davis used Mr. Yerman's advice, and that Mr. Yerman delivered the defense summation to the jury.) On November 10, 2003, dozens of potential jurors were waiting to begin jury selection. Davis made a belated announcement that he wanted to adjourn the trial. Justice Grella was not obliged to give an adjournment to allow Davis to pursue a search for a retained attorney. There was no reasonable likelihood that Davis's family would be able to pay a retained attorney even if they found one with whom Davis could get along.

Moreover, a defendant's right to counsel does not mean an unqualified right to counsel of his own choosing. Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692 (1988). In Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, the U.S. Supreme Court "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." There is no merit in the notion that Justice Grella should have allowed Davis time to find a lawyer with whom he could "vibe." This Court does not find any denial of Davis's Sixth Amendment right to counsel.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation of Magistrate Judge Eaton in its entirety and DENIES Davis's Petition for a Writ of Habeas Corpus. Because Davis has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this order would not be taken in good faith. The Clerk of the Court is directed to close this case.

**SO ORDERED:**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

New York, New York
April 23, 2010

21